UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
:
MESEROLE STREET RECYCLING, INC., :
and 847 HUDSON STREET CORP., :
:
                    Plaintiffs, :
:      06 Civ. 1773 (GEL)
  -against- :
:      **OPINION AND ORDER**
THE CITY OF NEW YORK, THE NEW YORK :
CITY DEP'T OF SANITATION, JOHN J. :
DOHERTY, individually and as commissioner of :
the New York City Dep't of Sanitation, and :
"JOHN" GELOMBARDO, "JOHN" :
MISDIAGMA, and "JOHN" CRIOELLO, :
individually and as employees of the City of :
New York, :
:
                    Defendants. :
:
------------------------------------------------------------x

Lawrence B. Goldberg, New York, NY, for plaintiffs.

Michael A. Cardozo, Corporation Counsel of the City of New York (Carrie Noteboom, Assistant Corporation Counsel, of counsel), New York, NY, for defendants.

GERARD E. LYNCH, District Judge:

      Plaintiffs 847 Hudson Street Corp. ("Hudson") and Meserole Street Recycling, Inc. ("Meserole"), who own property involved in New York City's recycling industry, seek relief pursuant to Section 1983, 42 U.S.C. § 1983, for defendants' search of their commercial premises without a warrant, which they claim violated their right to be secure from unreasonable searches under the Fourth Amendment. U.S. Const. amend. IV. They also ask this Court to exercise supplemental jurisdiction over their claim under Article 78 of the New York Civil Practice Law and Rules, N.Y. C.P.L.R. §§ 7801-7806, that local authorities have improperly rejected their

application for a municipal permit.  Defendants – the City of New York, the city's Department of Sanitation, and various employees of these entities – (collectively, "City") now move to dismiss.  They argue that plaintiffs have failed to state a federal claim upon which relief may be granted, and they urge dismissal of the state claim for lack of jurisdiction.  For the following reasons, the City's motion will be denied as to the federal claim, but will be granted as to the state claim.

## BACKGROUND

I.      Section 1983 Claim

Plaintiff Hudson owns the property in Brooklyn, New York, where plaintiff Meserole owns and operates a private facility receiving recyclable materials such as paper and cardboard.  The recycling operation proceeds under a permit issued to Meserole by the New York State Department of Environmental Conservation.  (Amended Compl. ¶ 4, citing Permit No. 2-6104-00214/00001; D. Ex. 1, DEC Permit No. 2-6104-00214/00001 ("DEC Permit").)  Plaintiffs do not hold a permit from the City to operate their business.

On June 14, 2005, by approximately 8 p.m., a number of city sanitation officers, including defendants Gelombardo, Misdiagma, and Crioello, had assembled outside the perimeter of plaintiffs' property, which was fenced and gated.  Shortly thereafter, a truck, belonging to a nonparty, was admitted onto the property.  The officers then demanded entry onto the property, and at least one officer entered the property without permission via a "railroad access."  (Amended Compl. ¶ 44.)

Plaintiffs at first refused the officers' demand for entry, but, following the officers' shouted "orders" and a threat to take "police action" (Amended Compl. ¶ 48), plaintiffs' personnel opened the gate that was blocking the officers' access.  Plaintiffs were apprised that all

the sanitation officers, who numbered more than three, were armed, and at least some of them were visibly carrying firearms.

Once plaintiffs opened the gate, the officers immediately entered and searched the property. They had not obtained a warrant to do so. Although the nonparty's truck was seized and impounded, plaintiffs were not cited for any violation or otherwise sanctioned as a result of the search. Plaintiffs subsequently filed this action pursuant to 42 U.S.C. § 1983, claiming that the search violated their Fourth Amendment rights and that they suffered damages as a result.

II.     Article 78 Claim

In August and September 2002, Meserole applied to defendant Department of Sanitation for a permit to transfer putrescible waste (essentially, waste prone to rotting). By a letter dated November 17, 2005, that agency rejected Meserole's application, stating that Meserole had failed to conduct an environmental review process, that certain new "siting rules" had been adopted since Meserole had filed its application, that its application was deficient and incomplete, and that Meserole would have to contact the agency if it wished to pursue its application. (Amended Compl. ¶ 81.)

Plaintiffs allege that there is reason to believe the rejection letter was sent to "chill" plaintiffs' exercise of their rights and in retaliation for their opposition to defendants' search of their property and seizure of the nonparty's truck in June 2005. (Amended Compl. ¶ 75.) They further protest the sufficiency of the agency's various stated, substantive grounds for rejection. (Id. ¶¶ 83-91.) They seek an order pursuant to New York's Article 78, N.Y. C.P.L.R. §§ 7081-7086, which provides for judicial review of the reasonableness of state administrative decisions, invalidating the rejection and compelling the Department of Sanitation immediately to process

Meserole's application and initiate necessary review procedures.

## DISCUSSION

I.   Rule 12(b)(6) Motion: Federal Claim

   A.   Motion to Dismiss Standard

Defendants have moved to dismiss the federal claim of this action pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that it is not a claim upon which relief may be granted. A defendant is entitled to dismissal of a claim on this ground only if it can show either that the complaint fails to provide fair notice of the basis of the claim, Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512-14 (2002), or that "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Patel v. Searles, 305 F.3d 130, 135 (2d Cir. 2002) (citation and internal quotation marks omitted).

When deciding a 12(b)(6) motion, the Court must take as true the facts as alleged in plaintiff's complaint. Bolt Elec., Inc. v. City of New York, 53 F.3d 465, 469 (2d Cir. 1995). It may consider documents incorporated in the complaint by reference. Chambers v. Time Warner, 282 F.3d 147, 152-53 (2d Cir. 2002). It may also take judicial notice of local ordinances and regulations. See Newcomb v. Brennan, 558 F.2d 825, 829 (7th Cir. 1977); Monk v. Birmingham, 87 F. Supp. 538, 539 (D. Ala. 1949), aff'd, 185 F.2d 859 (5th Cir. 1951); Players, Inc. v. City of New York, 371 F. Supp. 2d 522, 531 n.5 (S.D.N.Y. 2005). All reasonable inferences must be drawn in the plaintiff's favor. Freedom Holdings, Inc. v. Spitzer, 357 F.3d 205, 216 (2d Cir. 2004). However, "[g]eneral, conclusory allegations need not be credited . . . when they are belied by more specific allegations of the complaint." Hirsch v. Arthur Andersen & Co., 72 F.3d 1085, 1092 (2d Cir. 1995); Whyte v. Contemporary Guidance Servs., Inc., No. 03

Civ. 5544 (GBD), 2004 WL 1497560, at *3 (S.D.N.Y. July 2, 2004).

    B.    <u>Administrative Search Exception</u>

To state a claim for relief under 42 U.S.C. § 1983, plaintiffs must allege that a person acting under color of state law deprived them of a right, privilege, or immunity secured by the Constitution or laws of the United States.  42 U.S.C. § 1983; <u>Sykes v. James</u>, 13 F.3d 515, 519 (2d Cir. 1993).  Defendants argue that plaintiffs cannot win their federal claim, because the challenged search of plaintiffs' property was constitutional as a matter of law.

The City admits that the search occurred without a warrant and without consent (D. Mem. 6), but contends that the search "fits squarely within [the] administrative search exception to the warrant requirement."  (<u>Id</u>. at 9.)  It may ultimately be established that this exception applies.  But for now the City's argument must fail, as it is far from clear, based on the complaint and relevant regulatory materials, that all the requirements to justify an exception were present. Indeed, challenges to warrantless administrative searches have rarely, if ever, been dismissed before the development of any record.  <u>See</u>, <u>e.g.</u>, <u>New York v. Burger</u>, 482 U.S. 691 (1987) (reviewing denial of suppression motion following state trial court hearing); <u>Palmieri v. Lynch</u>, 392 F.3d 73 (2d Cir. 2004) (affirming summary judgment); <u>Anobile v. Pelligrino</u>, 303 F.3d 107 (2d Cir. 2002) (reviewing judgment after bench trial); <u>Blue v. Koren</u>, 72 F.3d 1075 (2d Cir. 1995) (reversing denial of summary judgment); <u>Players, Inc. v. City of New York</u>, 371 F. Supp. 2d 522 (S.D.N.Y. 2005) (granting summary judgment following limited discovery).

Commercial premises, like private homes, are protected under the Fourth Amendment from unreasonable searches and seizures.  <u>See Burger</u>, 482 U.S. at 699.  However, "the expectation of privacy that the owner of commercial property enjoys in such property differs

5

significantly from the sanctity accorded an individual's home." Anobile, 303 F.3d at 117 (citations omitted).  The commercial property owner's privacy interest, therefore, "may, in certain circumstances, be adequately protected by regulatory schemes authorizing warrantless inspections."  Id.

For warrantless inspections to be so authorized, the owner or operator of the commercial premises must be a part of a "closely regulated industry."  Burger, 482 U.S. at 701 (internal quotation marks omitted).  Whether an industry is closely regulated depends on the "pervasiveness and regularity" of government monitoring, such that the business owner should harbor a lessened expectation of privacy.  Id.  If the commercial property is utilized in a closely regulated industry, then a warrantless search of it may be deemed reasonable within the meaning of the Fourth Amendment if three circumstances additionally are established: (1) A "substantial government interest . . . informs the regulatory scheme pursuant to which the inspection is made"; (2) warrantless inspections are "necessary to further the regulatory scheme"; and (3) the regulations provide a "constitutionally adequate substitute for a warrant," by "advis[ing] the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and [by] . . . limit[ing] the discretion of the inspecting officers."  Burger, 482 U.S. at 702-03, 711 (internal quotation marks and citations omitted).  This third condition requires that the statutory scheme be "sufficiently comprehensive and defined that the owner of commercial property cannot help but be aware that his property will be subject to periodic inspections undertaken for specific purposes" and that it limit the "time, place, and scope" of the

regulatory inspections. Id. at 703.[1]

In this case, the existence of such an authorizing regulatory inspection system has not yet been established. Most significant, the regulatory scheme indicated by the City does not so clearly provide a "constitutionally adequate substitute for a warrant," 482 U.S. at 703, that it appears beyond doubt that plaintiffs will not be able to prove any facts amounting to an unconstitutional search.

1.     Closely Regulated Industry

There is no question that plaintiffs' property was used in connection with a closely regulated industry and that plaintiffs' expectation of privacy at the time of the challenged search therefore was diminished. Plaintiffs argue otherwise, first by flatly denying that recycling, the industry in which they are engaged, is closely regulated. (P. Mem. 11-12.) Yet notwithstanding plaintiffs' attempt to distinguish the categories, recycling materials are, in law and in common sense, a subset of the heavily regulated subject matter, solid waste. See N.Y. Comp. Codes R. & Regs., tit. 6, §§ 360-1.2(130), 360-1.2(131); New York, N.Y., Admin. Code, tit. 16, ch. 1, §§ 16-130, 16-303(i). Indeed, plaintiffs' state recycling permit, which they reference and thereby incorporate in their allegations, on its face states that it is issued pursuant to a state "Solid Waste Management" regulation. (Amended Compl. ¶ 4, citing Permit No. 2-6104-00214/00001; DEC Permit at 1.) The permit provides that, "[a]ll work associated with the authorized activity . . . must comply with all the applicable provisions of 6 NYCRR Part 360 (Solid Waste Management

---

[1] Plaintiffs implicitly argue that consent – implied, for instance by participation in a permit system of the searching authority, or express – is also required. (P. Mem. 3.) But "[i]n the context of a regulatory inspection system of business premises that is carefully limited in time, place, and scope, the legality of the search depends not on consent but on the authority of a valid statute." U.S. v. Biswell, 406 U.S. 311, 315 (1972).

Regulations)." (DEC Permit at 1, parentheses in original.) The solid waste industry is extensively regulated by federal, state, and local laws. See, e.g., Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901-6992; Title 7 of Article 27 of the New York Environmental Conservation law, N.Y. Envtl. Conserv. Law §§ 27-701 to 27-719; New York, N.Y., Admin. Code, tit. 10, ch. 1, § 10-110.

Besides the statutes indicating comprehensive government monitoring of plaintiffs' industry, the state permit individually issued to plaintiffs shows their business to be closely regulated. The permit itself enumerates an extensive series of requirements governing plaintiffs' operations and alerts plaintiffs to the possibility of inspection by "an authorized representative of the Department of Environmental Conservation" to determine compliance with the permit and relevant state laws. (DEC Permit at 1-5.) The permit also requires that "[t]he Permittee . . . comply with all applicable local, State, and federal statutory, regulatory, and legal requirements." (Id. at 2.)

Plaintiffs next argue, in essence, that the administrative search exception prerequisite is not met in this case because, even if their business is closely regulated by the state, it is not closely regulated by the municipal defendants. (P. Mem. 11-12.) In the first place, this contention is plainly inaccurate, as the City's laws extensively regulate both solid waste generally and recycling specifically. See New York, N.Y., Admin. Code, tit. 16, chs. 1-3. That the City apparently does not require a permit for plaintiffs to engage in certain activities (see Amended Compl. ¶ 7), does not necessarily exempt plaintiffs from regulations generally applicable to their industry. But in any event, the argument lacks legal merit, as it mistakes the focus and rationale of the "closely regulated" inquiry. The focus is not on the identity of the

regulating body, but on the "pervasiveness and regularity" of regulation. Burger, 482 U.S. at 701. This focus advances the rationale that, where an industry is subject to pervasive and regular government regulation, the reasonable privacy expectations of its participants are sufficiently diminished that warrantless searches may be constitutional if certain additional criteria are satisfied. See id. at 699-701 (noting that "[c]ertain industries have such a history of government oversight that no reasonable expectation of privacy exists").

### 2.     Substantial Government Interest

Plaintiffs sensibly do not suggest that the City lacks a substantial interest in regulating solid waste. Regulation of both putrescible and inorganic refuse alike is necessary to maintain the public health, avoid hazards and nuisances, and manage the use of public space – all traditional, core concerns of local government. See, e.g., N.Y. Coalition of Recycling v. City of New York, 598 N.Y.S.2d 649, 655-56 (Sup. Ct. N.Y. Co. Sept. 1, 1992) (internal quotation marks and citations omitted). The health and safety dangers attendant on improper practices in waste disposal are such that the public interest in detecting such practices is easily classified as "substantial."

### 3.     Necessity of Warrantless Inspections

Although it seems logical that warrantless inspections would be "necessary to further the regulatory scheme" that monitors solid waste handling, Burger, 482 U.S. at 702, resolution of that question properly must await development of a record. The inquiry is factual, as the necessity of dispensing with the warrant requirement depends on the degree to which having to obtain warrants would frustrate enforcement of a given regulatory scheme. For instance, the process of obtaining a warrant could create unjustifiable delay, if the nature of violations in an

industry were such that wrongdoers would be able to evade the law during the lag between an agency's learning of a problem and its securing authorization to investigate it. Courts that have found an administrative search exception typically have been moved by this element-of-surprise factor. See, e.g., Burger, 482 U.S. at 710; Blue, 72 F.3d at 1080-81; Players, Inc., 371 F. Supp. 2d at 538. Such reasoning may well prove persuasive in this case, yet there is nothing at this stage, in the complaint, the cited case law, or the statutory materials the Court may consider, to justify resolving this factual question now.

    4.    Constitutionally Adequate Substitute for Warrant

Nor does the City indicate any law or regulation that so clearly satisfies the constitutional functions of a warrant as to foreclose all possibility that a Fourth Amendment violation may be established. Defendants cite no statute signaling to businesses such as plaintiffs' that they may be subjected to warrantless inspection by the City for certain purposes, under certain circumstances, or to any certain extent – factors which represent the minimal constitutional requirements of notice and limited discretion to establish an administrative search exception. Burger, 482 U.S. at 702-03.

The City contends that, "[a]s a regulated and permitted entity engaged in solid waste handling within the City, plaintiffs are (or should be) aware of [the City's] rules governing illegal dumping, as well as its practice of conducting inspections." (D. Mem. 17.) However, it points to no statute or regulation or other rule disclosing any such inspection practice or delineating the "time, place, and scope" of regulatory inspections. Burger, 482 U.S. at 703.[2]

---

[2] The dearth of such regulatory language in this case stands in marked contrast to the explicit notice of warrantless searches provided in the City's medical-waste disposal rules: "The commissioner of sanitation or health and mental hygiene or an authorized agent . . . may enter

While as members of a closely regulated industry plaintiffs should perhaps be charged with knowledge of the regulations governing that industry, it is entirely different to charge them, absent any factual record, with knowledge of a warrantless inspection "practice" that appears nowhere among those regulations.

In decisions holding warrantless searches to be constitutional in light of a valid regulatory scheme, courts have enforced the requirement that the regulatory scheme satisfy the constitutional functions of a warrant. In New York v. Burger, the Supreme Court concluded that a New York state statute regulating automobile junkyards adequately substituted for a warrant, because, among other reasons, it indicated the scope of inspections with respect to specific items and their location and confined the times for performing inspections. 482 U.S. at 711. In a precursor to Burger, Donovan v. Dewey, 452 U.S. 594 (1981), the Court underscored the importance of considering a statute's equivalence to a warrant. It held warrantless inspections to be permissible under a federal statute regulating mine safety, because the statute adequately defined the targets of potential searches, the frequency of inspections, and the range of compliance for which inspectors could check. Id. at 603-04. The Donovan Court distinguished an earlier case, where a federal statute had been held not to authorize warrantless inspections, because that statute had "fail[ed] to tailor the scope and frequency of such administrative inspections to the particular health and safety concerns posed by the . . . businesses regulated" and had too broadly allowed searches "at . . . reasonable times, and within reasonable limits and

---

upon public or private property for the purpose of conducting inspections . . . . without a warrant during regular and usual business hours upon property used for nonresidential purposes . . . ." N.Y.C. Admin. Code, tit. 16, ch. 1, § 16-120. That provision also enumerates the proper purposes, items and locations, and extent of such warrantless searches with considerable detail.

in a reasonable manner." Id. at 600-01 (citations omitted).

In a Second Circuit case, the "elaborate oversight and inspection" provisions of a federal statute regulating nursing homes that participate in Medicare and Medicaid programs helped to persuade the court that a particular warrantless administrative search was constitutional. Blue v. Koren, 72 F.3d 1075, 1079 (2d Cir. 1995). That statute, the court noted, defined the scope of inspections as limited to issues of "patient care" and alerted participating nursing homes that they could be subjected to unannounced inspections with certain frequency. Id. at 1079, 1081 n.2.[3] Likewise, the district court in Players, Inc. v. City of New York, a Fourth Amendment challenge by a city licensee, ruled that the city's health inspection scheme adequately substituted for a warrant, because the regulations clearly provided licensees notice – via an explicit consent requirement – of the possibility of frequent inspections to be conducted at particular times, by particular authorities, and with respect to regulated areas of property. 371 F. Supp. 2d at 538-39.

Here, the City points to no defined regulatory inspection scheme meeting the elements of a warrant. The City argues that its inspectors were authorized to conduct the challenged search, as they are "peace officers" who "have the power under New York state law to carry out warrantless searches whenever such searches are constitutionally permissible." (D. Mem. 12.) Yet the condition for their authority – that the warrantless search be constitutionally permissible – has not been established.

---

[3] In Anobile v. Pelligrino, a challenge to the constitutionality of a warrantless search of a racetrack facility by state regulators, petitioners conceded that the regulatory scheme generally authorized warrantless administrative searches of commercial property. 303 F.3d 107, 118 (2d Cir. 2002). They argued, rather, that the particular search improperly exceeded the limits of the regulatory scheme. Id. The Second Circuit noted aspects of that regulatory scheme that fulfilled the administrative search exception requirement of substituting for a warrant, including specific limitations on investigatory purposes and locations to be searched. Id. at 111-12, 118.

Similarly, defendants' insistence that the challenged search was properly limited necessarily lacks force, as there is no definition of what the proper limits were. The City argues that "the scope of the search was properly limited, as the [sanitation] officers conducted the search for the limited purpose of determining whether [the nonparty] was dumping putrescible waste at a non-permitted transfer station." (D. Mem. 17.) But this is a factual assertion not drawn from the complaint, which allows for the possibility of other, or broader, purposes for the search, in that it states defendants not only investigated the supposedly unauthorized act of dumping but also "conducted and executed a search of [plaintiffs'] Property." (Amended Compl. ¶¶ 52, 53.) Further, even if the purpose was limited as defendants argue, the City has not cited any statute or regulation sufficiently alerting businesses such as plaintiffs that their property may be searched without a warrant for *any* particular purpose, against which the actual purposes for the subject search could be measured. Such notice and limitation is required to establish an administrative search exception to the general warrant requirement.

For the same reason, the City's argument that the timing of the challenged search rendered it reasonable must fail. That "the search was conducted while the Meserole facility was engaged in its regular [hours of] operation[]" (D. Mem. 17), as is apparently true from the complaint and incorporated documentation, does not by itself satisfy the requirement that the time of the search be reasonable according to a regulatory scheme. Without knowing of a statutory regime that adequately circumscribes investigators' discretion to commence a search, it is impossible to declare that their timing in this case was permissible. Cf. Burger, 482 U.S. at 711 ("The officers are allowed to conduct an inspection only 'during [the] regular and usual business hours.'") (quoting challenged statute and holding it to be a constitutionally adequate

13

substitute for a warrant in part because it limited the timing of searches).

After some development of a record, the existence of a valid administrative search scheme, with the proper limitations on investigatory discretion, may well become apparent. It is possible to infer the existence of such a scheme from the regulatory materials the City indicates. For instance, New York City law forbids the use of any property within the city as a "dump" or "transfer station" for either putrescible or non-putrescible waste without a permit and warns that failure to comply may result in "premises['] be[ing] sealed, secured, and closed." N.Y.C. Admin. Code, tit. 16, ch. 1, §§ 16-130, 16-131.2. It is imaginable that some regime of warrantless searches such as the search at issue here is somehow authorized, to the constitutional standard, in connection with these and related rules. After all, the constitutional requirements for an administrative search exception have been found in other cases on a variety of bases, from an affidavit by a city administrator about inspection practices, Players, Inc., 371 F. Supp. 2d at 530-31, to statutory text explicitly describing inspectors' "right" to enter and inspect property under certain circumstances. Anobile, 303 F.3d at 112 n.3. However, at this stage of this case, the existence of the requisite statutory scheme remains uncertain. It is therefore impossible to declare that this particular challenged action so clearly fell within the bounds of a permissible warrantless administrative search regime as to render it constitutional as a matter of law.

      C.     Qualified Immunity and Damages

The City also seeks dismissal of the federal claim by arguing that damages will not be recoverable, for various reasons, as a matter of law. For the most part these arguments must be rejected as premature. While the City is correct with respect to the unavailability of punitive damages as against municipal defendants, it nevertheless fails to establish that the case lacks any

potential whatsoever for relief.

Defendants correctly point out that claims for punitive damages against municipalities must be dismissed as a matter of law. See, e.g., City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 258-68 (1981); Morris v. Lindau, 196 F.3d 102, 112 (2d Cir. 1999). This rule, however, does not dispose of plaintiffs' claims for nonpunitive damages against the City or of their claims against defendant individuals.

The City contends that the defendant officers should enjoy qualified immunity. They would be entitled to such immunity, if it were established that a reasonable officer could have believed the warrantless search to be lawful, in light of clearly established law and the information that the searching officers possessed. Washington Square Post No. 1212 American Legion v. Maduro, 907 F.2d 1288, 1291 (2d Cir. 1990) (citation omitted). Given the factual nature of this qualified immunity inquiry, however, it is rarely appropriate to recognize the defense on a motion to dismiss. See McKenna v. Wright, 386 F.3d 432, at 436 (2d Cir. 2004); see also Hickey v. City of New York, No. 01 Civ. 6506 (GEL), 2004 WL 2724079, at *24 (S.D.N.Y. Nov. 29, 2004) ("the fact-intensive question of what the defendants knew or reasonably believed . . . can only be addressed on a fuller factual record"). Dismissing a complaint on qualified immunity grounds is usually inappropriate, because to do so requires not only that "the facts supporting the defense appear on the face of the complaint," but also that, "as with all Rule 12(b)(6) motions, . . . it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." McKenna, 386 F.3d at 436 (citations and internal quotation marks omitted).

15

This case presents no reason for departing from the usual, prudent path. Defendants claim qualified immunity "in light of the long-standing administrative search exception to the warrant requirement" (D. Mem. 18), and "because the Amended Complaint fails to allege a violation of plaintiffs' constitutional rights" (D. Rep. Mem. 8). Yet for reasons already discussed, it is impossible to declare at this stage that the challenged search fell within an administrative search exception or, therefore, that plaintiffs will be unable to prove defendants violated their constitutional rights. Nor is it clear what the searching officers knew or what could have been believed about the legitimacy of warrantless searches in that context. Thus, it is not now established that a reasonable officer could have believed that this warrantless search was lawful.

The City's arguments about lack of causation and the improper subject matter of the damages claimed (D. Mem. 19-20; D. Rep. Mem. 8),[4] fare no better. Although plaintiffs' alleged damages are not promisingly pled, plaintiffs have alleged enough to sustain a claim of violation under Section 1983. If, indeed, defendants did deprive plaintiffs of their Fourth Amendment rights by searching their property, forcibly and without authorization, it is not inconceivable that defendants would be entitled to at least some of the recovery they claim. Whether they will ultimately be able to meet their burden of proving resulting injuries is a question best addressed after development of a record.

---

[4] These arguments are essentially the same, as the City is asserting that the kinds of injuries that plaintiffs claim could not have resulted from the violations alleged.

II.    <u>12(b)(1) Motion: State Claim</u>

Defendants have moved to dismiss plaintiffs' Article 78 claim for lack of subject matter jurisdiction. <u>See</u> Fed. R. Civ. P. 12(b)(1). Indeed, even taking as true only those facts alleged in the complaint and drawing all reasonable inferences in the plaintiffs' favor, <u>cf</u>. <u>APWU v. Potter</u>, 343 F.3d 619, 623, 627 (2d Cir. 2003) (courts may look outside the pleadings to decide jurisdiction; plaintiffs bear burden of showing subject matter jurisdiction), it is clear that this Court should not exercise supplemental jurisdiction over the state claim. The motion to dismiss this claim will therefore be granted.

Plaintiffs' state claim is not "so closely related to the federal questions as to form part of the same case or controversy under Article III." <u>Lyndonville Savings Bank & Trust Co. v. Lussier</u>, 211 F.3d 697, 704 (2d Cir. 2000); <u>see also</u> 28 U.S.C. § 1367(a). Claims are closely enough related when they arise from a "common nucleus of operative facts," such that it seems prudent and economical to try them in the same proceeding. <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 725 (1966). When the federal and state claims rest on "essentially unrelated facts," the standard for supplemental jurisdiction is not met, and the Court lacks jurisdiction over the state claim. <u>Bu v. Benenson</u>, 181 F. Supp. 2d 247, 251 (S.D.N.Y. 2001) (quoting <u>Lyndonville</u>, 211 F.3d at 704).

Plaintiffs argue that "[t]he Article 78 claim involves the same set of facts as the rest of the Amended Complaint" and "provide[s] context for the [federal] claims." (P. Mem. 20-21.) To the contrary, however, their own allegations suggest two entirely different sets of facts: one having to do with the regulatory and narrative circumstances of a warrantless search that occurred on a single evening, and the other relating to the pendency and rejection of a municipal

17

permit application over the course of some three years.  Resolving whether an administrative search exception justified the City's warrantless inspection to the constitutional standard would not require any inquiry into plaintiffs' difficulties in obtaining a permit to handle putrescible waste.  Their allegations about those difficulties relate to such issues as who – the government or the applicant – bore the burden of conducting a necessary environmental review and whether old or new "siting rules" should have been applied to their permit request.  (Amended Compl. ¶¶ 83, 86.)  These issues have no bearing on the question of whether the Fourth Amendment was violated by an unreasonable search.  It is difficult to imagine how facts about the denial of a permit could lend any "context" to the Fourth Amendment claim (P. Mem. 21): Plaintiffs have not alleged that the search related in any way to the City's review of their permit application, nor has the City attempted to defend the search as an aspect of a permit review process or on the basis of plaintiffs' permit-related status.

   The only colorable link between the facts of the federal and state claims arises from plaintiffs' allegation that their permit application was rejected in retaliation for their "opposition to the defendants' illegal entry and search."  (Amended Compl. ¶ 75.)  Yet taking that allegation as true, resolution of the federal Section 1983 claim still would not involve any inquiry into the facts of plaintiffs' permit denial.  Possibly a court in addressing the state Article 78 claim, on the ground that plaintiffs were improperly denied a permit in retaliation, would have to engage in some fact-finding about the warrantless search.  Even assuming that the facts of the claims are therefore related in some way and that this relationship suffices to allow for supplemental jurisdiction, however, dismissal of the state claim is still appropriate.  As plaintiffs' own allegations – referencing environmental review procedures, site selection rules, the recent history

of New York City's putrescible waste permit policies and practices, and other local matters such as plaintiffs' zoning status (Amended Compl. ¶¶ 72-91) – show, the Article 78 claim raises complex issues of state and local law and therefore should be dismissed from this federal case. See 28 U.S.C. § 1367(c)(1). The values of "economy, convenience, fairness and comity," Bu, 181 F. Supp. 2d at 251 (citation and internal quotation marks omitted), clearly counsel this Court's declining to exercise jurisdiction over a claim involving such quintessentially local issues. Questions of where waste-disposal facilities ought to be located and of other licensing considerations, as well as broader concerns about local government fairness and due process, fit better with the expertise and mandate of New York's courts. The state courts are well equipped to adjudicate this claim of local government abuse, via the state law avenue New York has provided for that very purpose.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss plaintiffs' federal claim for failure to state a claim is denied, except to the extent that plaintiffs' claim for punitive damages against the City of New York and its Department of Sanitation is dismissed. Defendants' motion to dismiss plaintiffs' state claim for lack of jurisdiction is granted.

SO ORDERED.

Dated: New York, New York
       January 23, 2007

GERARD E. LYNCH
United States District Judge